STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of }
     Nancy Lemieux and William Metzler    }      Docket No. 241-12-98 Vtec
}
}

Decision and Order on Remaining Issues

Nancy Lemieux and William Metzler appealed from a decision of the then-Zoning Board of Adjustment (ZBA - now the Development Review Board (DRB)) of the Town of Hyde Park, granting Applicants a permit for "repairs to existing barn." This is the latest in a series of appeals involving the same property and parties. Appellants are represented by Paul S. Gillies, Esq.; the Town of Hyde Park is represented by James R. Dean Mahoney, Esq. Applicants William Barton and McKinistry Hill Realty Trust have not entered an appearance in the present case, but Mr. Barton did testify as a witness. After the hearing, the Court arranged for Mr. Barton and Appellants to engage in mediation, to determine if some alternative resolution of their continuing dispute was possible.

Applicants own or have the use and benefit of a 24-acre parcel of land in the Rural Residential District 2 on Town Highway 15 (the Diggins Road) in the Town of Hyde Park, directly across the road from Appellants' residential property. Applicants obtained a permit from this Court in 1996 (Docket No. E95-132 (July 31, 1996)) to renovate the existing barn for use as a residence upstairs and a workshop downstairs. The barn is a pre-existing non-conforming structure as it is set back less than the 50 feet required for a front setback from the public highway right-of-way. Agricultural uses, single-family dwellings, and home occupations are all permitted uses in this zone. Appellants' residence is at a higher elevation than the barn and activities on Applicants' property within the front setback are visible and audible from Appellants' residence.

This Court had found on summary judgment in Docket No. E95-132, that the existing barn had no foundation, no windows, only a double sliding door access, no

1

electricity, no water supply, and no sewage disposal facilities, and that its prior use was for general farm purposes, most recently for hay storage. That order found that Applicants had made the following external alterations or improvements to three sides of the structure: removal of all old barnboard; installation of 2x6 studs between all existing posts and beams; re-sheathing with rough-sawn timber; application of vapor barrier material; framing and installation of nine windows; construction of an exterior set of stairs and a landing in the rear of the building, and installation of an exterior door at the landing. These alterations or improvements to the structure did not reduce the existing setback distance to the public highway right-of-way. The exterior stairs and landing have since been removed.

In the July 31, 1996 decision, the Court imposed the following conditions as necessary and appropriate to minimize the effect of the setback non-compliance on Appellants' property, in light of the change in use for which that permit was requested.

1. No vehicles shall be parked within the front setback. A driveway shall be located to the west of the building, between the building and the septic field, so that any parking area is to the north of the building and does not extend beyond the building to the east. [Applicants are] not required to plow the entire front setback area, but any snow plowed from the front setback area shall be removed beyond (that is, to the north of) the front face of the building.
2. The use of the front sliding door of the building is restricted to such use as is necessary for deliveries of materials or placement of boats, vehicles or equipment which are too large to pass through the main door outside the front setback at the back of the building.
3. Any exterior lighting installed on the south or the east side of the building shall be pointed downwards and shielded so that no direct light shines beyond the south side of the traveled way of the road and so that no glare is visible from Appellants' property.
4. [Applicants] shall plant and maintain a staggered double row of evergreens (white pine, spruce or cedar species), 6 feet in height and ten feet on center, immediately to the north of the highway right-of-way, from the easterly edge of the front door opening and extending easterly for 40 feet.
5. This permit specifically does not allow the use of the shop for commercial purposes or for home occupation purposes.

Appellants could have sought enforcement of the Court's order under 24 V.S.A. §4470(c), or could have requested the Town to take enforcement action. The Town did file an enforcement action in Lamoille Superior Court, Docket No. 89-4-97 Lecv, but Appellants were not parties to that action, and did not file their own action under §4470(c)

2

or obtain party status in Superior Court as intervenors. The Town and Applicants settled the enforcement case and the Lamoille Superior Court approved the stipulation and entered it as a court order on March 4, 1998. The Superior Court Order provided for a fine, provided for attorney's fees and costs in any future suit to enforce the order, and provided as follows:

1. [Applicants] agree to surrender their current zoning permit to use the barn as a residence, and further agree to the Town's voiding of said permit.
2. From this date forward, [Applicants] shall not use the barn for residential purposes without first obtaining all necessary permits.
3. From this date forward, [Applicants] shall not use the camper, while it is stored within the barn, for residential purposes without first obtaining all necessary permits.
4. [Applicants] shall not use the barn for any non-permitted purposes without first obtaining all necessary permits.

The effect of this order was to vacate the 1996 permit, including the conditions imposed by the Environmental Court. In the present case, Appellants ask the Court to impose similar conditions on the present permit.

In August of 1998, Appellants complained to the Town's Zoning Administrator that Mr. Barton was continuing to use the building after the permit had been vacated, and that no permit was on record for the external alterations and improvements. Appellants requested, in addition, that the Town enforce the Superior Court order. The Zoning Administrator responded that she would be notifying Applicants of a "bylaw violation in the absence of a zoning permit for the external alterations and improvements to the structure." Appellants did not appeal the Zoning Administrator's failure to act on their other requests, nor did they bring a mandamus action to require the Zoning Administrator or other Town official to enforce the Superior Court order.

Applicant then applied for and was granted zoning permit No. 98-40 for "repairs to existing barn," covering the exterior improvements already made to the barn and to complete those improvements. The application did not request any particular use to be made of the barn, and did not request a permit to place a camper/trailer in the barn or to use it for overnight stays from time to time. Docket No. 241-12-98 Vtec is Appellants' appeal of the permit granted for repairs to the existing barn.

3

After summary judgment motions, Questions 2 (amended), 5, 7, 9(amended), 10, 11, 12, 15 and 17 remain for decision. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

Scope of the Present Appeal

As we have already ruled, this appeal does not involve issues as to the use of the barn, but only as to whether the exterior improvements should be allowed. If any change in use requires a change-in-use permit, a conditional use permit, or a variance, independent of the exterior structural changes, such applications are not before the Court in the present appeal. Moreover, the present appeal does not involve any request for or denial of any request for enforcement action by the Town; what was appealed to the ZBA and thence to this Court was the grant of a permit for repairs to the barn, not a request for enforcement action. No enforcement action is pending before this Court related to the present use of the barn, and this Court would not have jurisdiction of any effort to enforce the Superior Court order. Any changes of use which may have been made of the barn may be addressed in the present appeal only to the extent that those changes may relate to the need for conditions to mitigate the physical non-conformity of the barn with the front setback requirements of the Zoning Bylaws.

Revised Question 2

We denied summary judgment on Appellants' revised Question 2, because facts were in dispute as to Applicants' future plans to use the camper/trailer and Applicants' then-present use of the barn. As revised, Question 2 requested the Court to determine whether the change of use of the structure "to use the camper/trailer located within the structure (on site for many years) for occupancy every other weekend in the coming years until the applicant completes work on a new residence, and for storage of a boat, snowmobile, tools and building materials, as a personal workplace, and as a garage"

4

constitutes land development, whether it requires a permit for a change of use and whether it requires a conditional use permit.

However, it appears from the evidence that these issues were not before the then-ZBA in the decision appealed from, and therefore are not before the Court in this appeal. While Appellants arguably requested that the Zoning Administrator address these issues in their August 21, 1998 letter, they did not appeal to the then-ZBA from the Zoning Administrator's response, nor did they bring any kind of mandamus action to require the Town to enforce the Superior Court order. Rather, Applicants' applied for a permit to authorize the exterior repairs, and they only appealed from the then-ZBA's grant of that permit.

Revised Question 9, and Questions 10, 11, 12 and 15

Similarly, we denied summary judgment on Appellants' revised Question 9, because facts were in dispute as to whether the camper/trailer which applicant has placed within the barn "continues to be used for occupancy." Evidence was presented that Mr. Barton uses the camper for overnight occupancy on approximately 40 to 50 days a year.

Questions 10, 11, 12 and 15 were legal questions inquiring whether the camper is considered a "single family dwelling" under §IV(B)(1)(b) or a "single family residential structure" under §XIV(23) of the Zoning Bylaws; whether its use for occupancy is land development that requires a permit; whether its location or relocation onto Applicants' property is land development that requires a permit; and whether its location within a building that does not comply with the front setback regulations requires a variance. In the summary judgment order, we ruled that Questions 10, 11, 12 and 15 were entirely theoretical and that answers to them would constitute an impermissible advisory opinion, unless they were linked to a particular proposal for occupancy or placement of the camper on the parcel or within the barn at issue in the present appeal.

It appears from the evidence that the application that was before the then-ZBA in the decision appealed from only requested approval of the exterior repairs to and construction on the barn. The application did not request any particular proposal for occupancy or placement of the camper on the parcel or within the barn. Therefore,

5

Questions 9, 10, 11, 12 and 15 were not before the then-ZBA in the decision appealed from and are not before the Court in this appeal.

Question 17

Question 17 requests the Court to determine, if the barn structure is not in agricultural or residential use, whether it should be treated as a conditional use; that is, whether a conditional use permit should be required. If the barn is not in a permitted use, such as agricultural, residential, home occupation or some other permitted use, then its use may require a conditional use permit. However, resolution of this question was not before the then-ZBA in the decision appealed from and therefore is not before the Court in this appeal.

Questions 5 & 7

Questions 5 and 7 request the Court to determine whether the permit should be granted with conditions to mitigate the impact of the non-conformance to the front setbacks. Appellants request that the permit for the exterior changes be issued only on the following conditions:

A.     No vehicles shall be parked within the front setback or within the public right-of-way of Diggins Road. A driveway shall be located and constructed to the east of the building, east of the telephone pole. All parking shall occur within an established parking area to be located and constructed on the north side of the building, not to extend beyond the northeast corner of the building.

B.     Applicants or their successors are not required to remove all the snow from the front setback area, but any snow plowed from the front setback area shall be removed to the west of the building.

C.     The main entry door shall be located and constructed on the north side of the building. The front sliding door may be used for deliveries of materials and/or boats and vehicles that are too large to pass through the main door. Other than those uses, the sliding door shall remain closed. No materials shall be placed or boats and/or vehicles parked outside the building within the front setback or within the public right-of-way of Diggins Road

D.     Applicants or their successors may install exterior lighting installed on the south or the east side of the building so long as it is pointed downwards and shielded so that no direct light shines beyond the southern edge of the traveled way of the road and so that no glare is visible from Appellants' property.

E.     Applicants and their successors shall plant and maintain a staggered double row of evergreens (white pine, spruce or cedar species), taken from nursery stock or comparable quality, 8 feet in height and ten feet on center, immediately to the north

6

of the highway right-of-way, from the easterly edge of the sliding door and extending easterly to the telephone pole on the east side of the building.

F.       For purposes of this order, "residential use" shall mean the use of the building for overnight occupancy, whether within the camper or within the building. There shall be no residential use without a change of use permit.

G.  The Town of Hyde Park shall not attempt to have these provisions amended or struck by its Zoning Administrator, Zoning Board of Adjustment, or any court during any process of enforcement or other action nor shall it consent to the withdrawal of the permit on which these conditions are based by Applicants or their successors and assigns; however, the Town may return to this Court for amendment of this order.

Of these proposed conditions, portions of the first four are necessary to mitigate even the exterior changes and repairs to the structure which are the subject of the present application, and will be imposed by the Court.  They relate directly to whether the changes to the doorways opening into the building proposed in the application and already made to the building should be allowed, or whether they should be denied under §III(C)(1) due to the proximity of the front of the building to the roadway.

On the other hand, the screening requirement in proposed condition E, which the Court found necessary to impose in the 1996 ruling, remains important and would be imposed in some similar form by the Court in any change of use or conditional use permit that came before the Court.  However, it cannot be justified by the exterior repairs and construction application which is all that is before the Court in the present case.  It can only be justified if some use is being made of the land to the east of the building and behind the building, which has the potential to interfere with Appellants' use and enjoyment of their property.  Similarly, proposed paragraph F is beyond the scope of the present application. The present application before the Court covers only the proposed exterior repair work, and does not involve any application for a ruling as to whether Applicants' residential use of the building on approximately two weekends a month, requires a change of use permit. This Court cannot address that question unless it was before the ZBA in the decision appealed from.  Further, there is no authority in the zoning statute or the rules of civil procedure for the Court to enjoin the Town in the manner proposed in Paragraph G above.

7

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that a permit for the exterior changes and repairs to the structure is hereby GRANTED, subject to the following conditions.

1.    No vehicles, boats or other equipment shall be parked and no materials shall be placed within the front setback or within the public right-of-way of Diggins Road. A driveway may be located and constructed to the east of the building or to the west of the building, with any parking area to be located and constructed on the north side of the building, not to extend beyond the northeast or northwest corners of the building.  In determining whether to place a driveway to the east of the building, Applicants should bear in mind that evergreen screening may be required as a condition to any use permit for the building.

2.    Any snow plowed from the front setback area and remaining on the property shall be placed northerly of the roadside face of the building.

3.    The main entry door shall be located and constructed on the north side of the building.  The front sliding door may be repaired and used for deliveries of materials and/or boats and vehicles that are too large to pass through the main door.  Other than during such deliveries, the front sliding door shall remain closed.

4.    Applicants or their successors may install exterior lighting installed on the south or the east side of the building so long as it is pointed downwards and shielded so that no direct light shines beyond the southern edge of the traveled way of the road and so that no glare is visible from Appellants' property.

With respect to the reasons that Appellants proposed their condition G, the Court wishes to note that, to avoid problems in the future, the Town of Hyde Park should not file any enforcement action, whether in this or in any other court, nor hold any hearing of its now-Development Review Board, with regard to the premises at issue in this appeal, without prior notice to Appellants or their successors, to enable them to participate in, intervene in, or appeal from such actions to protect their own interests.

8

Dated at Barre, Vermont, this 29th day of December, 2000.

_____

_____
Merideth Wright
Environmental Judge